16 N.J. Super. 83 (1951)
83 A.2d 794
CORRINE L. BOND, PLAINTIFF-RESPONDENT,
v.
ELMER H. BOND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1951.
Decided October 24, 1951.
*84 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. J. Mortimer Rubenstein argued the cause for the plaintiff-respondent (Mr. Milton Schamach, attorney).
Mr. Salvatore D. Viviano argued the cause for the defendant-appellant.
PER CURIAM.
The defendant appeals from the judgment of conviction for contempt for violation of the final judgment of the Chancery Division entered on June 19, 1950, in favor of the plaintiff for separate maintenance, directing that commencing January 20, 1950, the defendant pay $30 per week for the support of his wife and their minor child; future and current taxes on the home occupied by the plaintiff, the latter amounting to $569.99; $608.45 medical bills, and $500 counsel fee and costs. On appeal by the defendant, the Appellate Division affirmed the judgment.
Except to the extent of $20 per week for the support of his wife and child, the defendant did not comply with the terms of the order. Contempt proceedings were instituted by the plaintiff and the defendant was adjudged to be in contempt. His imprisonment was ordered until the moneys and costs were paid.
*85 Defendant contends that he has not willfully contemned the order of the court; that he has no financial resources with which to satisfy the payments in question other than his interest in the real estate occupied by his wife, title to which is held as tenants by the entirety; that from the very outset he has offered to join in a conveyance to sell the real estate and thus satisfy the judgment out of his share of the proceeds, but his wife has consistently refused to join in such a conveyance
The rule respecting the defendant's duty to comply with the order in question is quite clear and is succinctly stated in Katz v. Katz, 113 N.J. Eq. 75 (E. & A. 1933), at pp. 75, 76, to wit:
"* * * To succeed in this defense he must prove  the burden is his  that his inability was real; it is not enough that he show that compliance with the order was inconvenient or difficult; that the order, by changed conditions, had become inequitable, or that exact obedience would result in great hardship to him. Circumstances that would move the court to modify the order do not justify a party who ignores the mandate."
The plaintiff contends that "the defendant has demonstrated by his conduct complete contempt for the orders of the court. He has attempted to arbitrarily decide what he feels he should pay to the plaintiff for her support and the support of the child regardless of what the orders of the court might be. He persisted in such conduct even after the affirmance of the judgment of the trial court upon appeal." The record reveals that the defendant is employed by his father; that "he earns wages of $65 gross each week and that he is paid every two weeks $126.45 net, deductions being made for Federal Old Age, Withholding Tax and State Unemployment; that every two weeks he disburses said sum of $126.45 by paying $60 to his former wife, $40 to the plaintiff, and the balance of $26.45 he uses for his maintenance." A contested application by the defendant for modification of the order for payment of alimony to his first wife is pending.
*86 The plaintiff argues that the important position held by the defendant in his father's business justifies an inference that he is being paid a much larger salary than $65 per week. However, there is a paucity of any such evidence in the record. It is clear that the only resource out of which the defendant can pay the arrearages and other moneys is out of his share of the real estate which, incidentally, was a wedding gift from the defendant's parents and has an approximate value of $25,000. The plaintiff argues that the dignity and authority of our courts is being deliberately and arbitrarily contemned, and if the order is enforced defendant's father will make the necessary payments to avoid his son's imprisonment. That may well be, but we do not look with approval upon a course of action that will bring compulsion upon a sympathetic relative to produce the funds necessary to purge a defendant of his contempt. We are inclined to agree with plaintiff that defendant's conduct has been unwarranted and our disposition of this appeal is not to be construed as approval thereof. However, the defendant has from the outset indicated his willingness to join in a conveyance of the real estate in order to raise the necessary moneys. Our courts hold that a husband's real estate should be considered in passing upon his faculties to meet the required payments of alimony. The willingness of the wife to execute the conveyance will, of course, be requisite to enable him to carry out such purpose. Should such willingness be wanting, the court may then determine whether the order should be modified. Close v. Close, 25 N.J. Eq. 434 (Ch. 1874), affirmed 27 N.J. Eq. 504 (E. & A. 1875); Andreas v. Andreas, 88 N.J. Eq. 130 (Ch. 1917); Bonanno v. Bonanno, 4 N.J. 268 (1950).
At the argument, defendant's counsel stated that if the property is sold, the defendant will pay out of his share all of the moneys necessary to satisfy the order and the balance thereof may be held as security for future payments. In such an eventuality, the defendant concedes that the plaintiff should be entitled to an increase of alimony sufficient to *87 provide her with other suitable living quarters, the amount thereof to be based upon the factual situation existing after the sale and application of so much of defendant's share as may be necessary to satisfy the order of March 9, 1951, and subsequent accruals.
Reversed. No costs.